**KINLEY CORPORATION, Plaintiff,**

v.

**Gonzalo ANCIRA, Defendant.**

**No. 91–CV–764A.**

United States District Court,
W.D. New York.

July 25, 1994.

Jaeckle, Fleischmann & Mugel, Buffalo, NY, for plaintiff (Linda H. Joseph and Andrea R. Polvino Moore, of counsel).

Diebold & Farmelo, P.C., Buffalo, NY for defendant (Neil R. Farmelo and Craig L. Miller, of counsel).

## DECISION AND ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on February 4, 1992. On November 30, 1992, plaintiff filed a motion for partial summary judgment, pursuant to Fed.R.Civ.P. 56, requesting summary judgment on Claims One and Two, which seek declaratory judgments declaring the Royalty Agreement unenforceable on the ground that defendant failed to provide any consideration for the contract.

On December 21, 1993, Magistrate Judge Foschio filed a Report and Recommendation

recommending that plaintiff's motion be denied.

Plaintiff filed objections to Magistrate Judge Foschio's Report and Recommendation on December 29, 1993. Defendant filed a response to plaintiff's objections on February 2, 1994.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the Court denies plaintiff's motion for partial summary judgment.

IT IS ORDERED that this matter be referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on February 4, 1992 for report and recommendation on any dispositive motions. The matter is presently before the court on Plaintiff's motion for partial summary judgment, dated November 30, 1992.

### *BACKGROUND*

Plaintiff, Kinley Corporation ("Kinley"), a New York corporation, filed this diversity action against Defendant, Gonzalo Ancira, a resident of Texas, on November 22, 1991, raising two claims for declaratory judgments, and seeking damages for alleged breach of contract and fraud. On January 30, 1992, Ancira answered the complaint, asserting four counterclaims against Kinley seeking declaratory judgments based on a Royalty Agreement previously negotiated between the parties, and the related royalty payments due under the contract, and for a declaratory judgment relating to a Commission Agreement also previously negotiated between the parties.

A scheduling conference was held with the undersigned on April 8, 1992, and discovery proceeded accordingly. On November 24, 1992, Ancira filed a motion to disqualify the law firm of Jaeckle, Fleischmann & Mugel from representing Kinley as trial counsel in this action. That motion is discussed in a separate Decision and Order.

On November 30, 1992, Kinley filed a motion for partial summary judgment, requesting summary judgment on Claims One and Two of the Complaint which seek declaratory judgments, declaring the Royalty Agreement unenforceable on the ground that Ancira failed to provide any consideration for the contract. Kinley also requested an order granting a stay of discovery during the pendency of the summary judgment motion. On the same day, Kinley also filed a motion to compel documents and answers to interrogatories by Ancira. On December 31, 1992, Ancira filed a motion to extend the deadline for completion of discovery.

Oral argument on the matter was held before the court on all outstanding motions on January 15, 1993. At oral argument, Kinley withdrew its claim of misrepresentation based on Ancira's alleged representation to Kinley regarding the tariff rate on a pipeline project in which Kinley was involved.

For the reasons as set forth below, I recommend that Plaintiff Kinley's motion for partial summary judgment be DENIED.

### *FACTS*

Kinley is a corporation in the business of building, owning, and/or operating pipelines to transport and deliver jet fuel to military airbases in the United States.[1] Kinley had engaged Ancira, a professional engineer with extensive fuel pipeline experience, as an independent contractor for many years to provide

1. The fact statement is taken from the papers submitted in relation to Kinley's motion for partial summary judgment, along with the other papers and pleadings filed in this action.

engineering and other services relating to pipeline project acquisitions and operations. (D. 45).[2] Ancira worked in such a capacity, billing Kinley monthly for his services and for reimbursable expenses such as travel costs, pursuant to an "unwritten arrangement" Ancira had with James H. Kinley, now the Chairman of the Board of Kinley, over a twenty year period. (D. 126–127, 228).

Effective October 1, 1988, Kinley and Ancira entered into a Royalty Agreement (the "Agreement"). Paragraph 1 of the Agreement stated as follows:

> Ancira will continue to locate and present pipeline project opportunities to Kinley; negotiate agreements with the other parties on behalf of Kinley; prepare feasibility studies, cash flow forecasts and other analyses to enable Kinley and its lenders to evaluate proposed projects and to decide whether to acquire, own and operate proposed projects.

*See* Exhibit A, Plaintiff's Notice of Motion, Royalty Agreement, dated October 1, 1988, at ¶ 1.

In exchange for these services, Kinley agreed to pay Ancira a four percent royalty based on the gross revenues of each pipeline project for all periods beginning on or after the latter of April 1, 1989, or the date on which Kinley accepted the project, construction had been completed, its operations had begun, and a positive cash flow for that project had been achieved for six months, except for the Offutt Air Force Base Pipeline. *See* Royalty Agreement, at ¶ 2. Royalties for the Offutt Air Force Base Pipeline were agreed to for periods beginning on and after November 1, 1989. The Agreement was intended to cover all future projects upon notarized written notice of acceptance of the project by Kinley and upon notice to Ancira. *See* Royalty Agreement, at ¶ 2.2.

Pursuant to the Agreement, Ancira had the right to transfer his royalty rights to his spouse or descendants or to a corporation controlled by a trust for the benefit of his spouse or descendants, and also the right to sell his royalty rights to an unrelated third party. *See* Royalty Agreement, at ¶ 4. However, Kinley retained a right of first refusal to acquire the royalty interests for equal consideration. Additionally, upon Ancira's death, Kinley was to have the right to purchase the royalty interests created by the Agreement. *See* Royalty Agreement, at ¶ 5.

On May 18, 1990, Kinley entered into a contract to acquire a majority interest in a partnership to build and operate a pipeline servicing the Lemoore Naval Air Base in Lemoore, California. Ancira assisted in the negotiations regarding this pipeline, and then requested compensation other than that described in the Agreement. According to Ancira, the Royalty Agreement was entered into between the parties to induce Ancira to provide and present Kinley with pipeline opportunities rather than presenting such opportunities to Kinley's competitors, (D. 206–208, 237), and was not meant to represent the entire compensation agreement between the parties. (D. 228). Rather, Ancira states that, in addition to the Royalty Agreement, he was entitled to bill Kinley for all engineering services rendered by him on their behalf in negotiating pipeline projects and for other engineering services. (D. 147–149). In fact, Ancira did bill Kinley for such services after October 1, 1988, and the invoices were paid by Kinley over a period of eighteen months. (D. 240, 244). Some of the submitted invoices are not detailed as to the actual work performed and may have, in fact, included time charged by Ancira related to pipeline procurement and related negotiations, in addition to purely engineering services. As to the Lemoore project, Kinley entered into a Commission Agreement with Ancira, dated May 21, 1990, agreeing to pay Ancira $50,000 in five increments based on the successful signing of a purchase agreement between Kinley and two other parties for the purchase of the pipeline between Fresno, California and the Lemoore Naval Air Base. *See* Exhibit B, Complaint, dated November 22, 1991.

On September 3, 1990, James L. Kinley, the President of Kinley and the son of James

---

**2.** D. references are to the page numbers of the transcript of the deposition of Gonzalo Ancira, taken on October 27 and 28, 1992.

H. Kinley, the Chairman of the Board of Kinley, sent Ancira a handwritten note, complaining about the way Ancira was handling Kinley's business matters. In particular, J.L. Kinley voiced his disapproval over certain aspects of Ancira's duties and stated that, "I have tried my very best to please you in giving you everything that has been requested. I have given you your royalties, commissions, expense accounts and engineering fees." *See* Exhibit 5, Attachment to Affidavit of Neil R. Farmelo, dated January 11, 1993, Letter from J.L. Kinley to Ancira, at p. 3. He further stated that he did not do business the way his father had, however he hoped that Ancira would positively respond to the letter as he did not "under any circumstances want to end [their] relationship." *See* Letter from J.L. Kinley to Ancira, dated September 3, 1990, at p. 4.

On September 18, 1990, J.L. Kinley sent another letter to Ancira, stating that Ancira was not entitled to compensation over and above that as provided for by the Royalty Agreement. *See* Exhibit 5, Opposing Affidavit of Defendant, dated January 7, 1993. J.L. Kinley indicated that Ancira had been paid in full as of August 31, 1990 for the Lemoore project, and that Ancira would be further compensated, according to the Royalty Agreement, if Ancira assisted Kinley in establishing tariffs, and conducting other negotiations with any agency or company. The letter also stated that, as to a new project, the "Miramar" project, any compensation would be paid in a similar fashion, *i.e.*, pursuant to a commission and royalty arrangement.

Ancira replied to J.L. Kinley with a letter, dated October 1, 1990, stating that J.L. Kinley was attempting to unilaterally establish new requirements and conditions to their business relationship, and outlining Ancira's expectations under the Royalty Agreement, and for other compensation relating to Ancira's engineering services provided to Kinley. *See* Exhibit 6, Opposing Affidavit of Defendant. By letter dated October 8, 1990 from J.L. Kinley, Ancira was informed that he would no longer represent Kinley on Kinley's past, present, or future projects, and that his services had been cancelled as of September

1, 1990. Kinley further refused to pay Ancira's invoice for services performed during September, 1990. *See* Exhibit 7, Opposing Affidavit of Defendant. The Royalty Agreement itself does not contain a cancellation or termination clause.

Kinley has now asserted that Ancira did not provide the services agreed upon in the Royalty Agreement for the Lemoore pipeline project. As a result, Kinley has not remitted royalty payments to Ancira based on this project. Kinley further claims that, as written notice was not provided by either Kinley or Ancira regarding the applicability of the Royalty Agreement to the Lemoore pipeline project, royalties are not due and payable to Ancira from the Lemoore project. Additionally, Kinley has not paid Ancira the remaining $20,000 balance from the Commission Agreement, claiming that the services have not been properly rendered by Ancira.

### DISCUSSION

#### 1. *Summary Judgment*

█ Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. at 2556–57.

█ The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to

draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255, 106 S.Ct. at 2513–14; *Rattner, supra,* at 209.

In a diversity action such as the instant action, because New York is the forum state, New York's choice-of-law rules will determine which state's substantive law should apply. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Machleder v. Diaz,* 801 F.2d 46 (2d Cir.1986). The question is, therefore, not what law the federal court would apply, "but what law the New York courts would apply." *O'Connor v. Lee–Hy Paving Corp.,* 579 F.2d 194, 205 (2d Cir.1978), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978). Under New York's choice-of-law rule, the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied. *See Index Fund, Inc. v. Insurance Company of North America,* 580 F.2d 1158 (2d Cir.1978); *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). In this case, as all parties have cited to New York law, and the contract at issue states that New York law shall apply to any disputes, the court concludes that all parties agree that New York law should apply to this action.

In this case, Kinley contends that there are no disputed issues of material fact, and that, as a matter of law, it is entitled to partial summary judgment as relates to the Royalty Agreement. Kinley claims that Paragraph 1 of the Agreement was supposed to represent the consideration given by Ancira to Kinley to enter into the contract. If, as Ancira claims, he is entitled to be paid at a per diem rate for locating and negotiating pipeline projects for Kinley, along with other engineering services, Kinley asserts that Ancira has not given any consideration for the Royalty Agreement and that, therefore, the contract is unenforceable. Accordingly, Kinley contends that it is entitled to partial summary judgment on Claims One and Two of the Complaint, declaring the Royalty Agreement unenforceable for lack of consideration.

Ancira, however, contends that the Royalty Agreement is fully enforceable as it was the intention of the parties to enter into the Agreement to provide incentive for Ancira to exclusively provide and present Kinley with pipeline opportunities as they became available, and that any further engineering services were always intended to be paid for on a per diem basis as had been the normal working practice between Kinley and Ancira for twenty years. Ancira argues that the consideration given for the contract is his implicit agreement to find and present any new pipeline opportunities exclusively to Kinley, as opposed to other companies with which Ancira had conducted business in the past.

A contract which does not require performance by each party is unenforceable for lack of consideration. *Bakers's Aid v. Hussmann Foodservice Co.,* 730 F.Supp. 1209, 1219 (E.D.N.Y.1990). If the promisor loses nothing, and the promisee acquires nothing by an arrangement, there is no valid consideration. *Manufacturers Hanover Overseas Capital Corp. v. Southwire Co.,* 589 F.Supp. 214, 219 (S.D.N.Y.1984). A benefit to a promisor or a detriment to the promisee is sufficient consideration for a contract. 21 N.Y.Jur.2d, Contracts § 77; *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 197, 443 N.E.2d 441, 444 (1982). "It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him." *Weiner, supra,* 457 N.Y.S.2d at 197, 443 N.E.2d at 444. "Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial as long as it is acceptable to the promisee." *Weiner, supra,* 457 N.Y.S.2d at 197, 443 N.E.2d at 445. Absent fraud or unconscionability, the adequacy of the consideration is not a proper subject for judicial review, rather, it is enough that something of "real value in the eye of the law" is exchanged. *Apfel v. Prudential–Bache Securities, Inc.,* 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095, 1097 (1993). In addition, the absence of mutuality

of obligation "may be remedied by the subsequent conduct of the parties." 21 N.Y.Jur. 2d, Contracts § 11, at pp. 423–424; *Ferguson v. Ferguson*, 97 A.D.2d 891, 470 N.Y.S.2d 715, 716 (App.Div. 3rd Dep't.1983).

▇▇▇▇▇ Contracts generally must be interpreted so as to effectuate the intentions of the parties. *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Caution must be exercised in granting summary judgment when state of mind or intent is at issue. *Wakefield v. Northern Telecom, Inc.*, 813 F.2d 535, 540 (2d Cir. 1987).

In this case, the parties strongly disagree as to the meaning and interpretation of Paragraph 1 of the Royalty Agreement. Kinley contends that Ancira was required to perform specific duties in the procurement of pipeline opportunities in order for him to receive the royalties as anticipated by the Agreement, and that Ancira was not to be also paid on a monthly per diem basis. Ancira, on the other hand, believes that he was required to provide information regarding pipeline opportunities exclusively to Kinley in exchange for the royalties. Any other engineering services were to be compensated pursuant to the parties' previous practice. Kinley, in turn, argues that, if Ancira is entitled to be compensated on a per diem basis, he did not provide any consideration for the Royalty Agreement, and, therefore, the Agreement is unenforceable.

The evidence submitted to the court establishes that both James H. Kinley and James L. Kinley viewed the Royalty Agreement as an incentive to encourage Ancira to bring pipeline deals to Kinley. *See* Deposition Transcript of James L. Kinley, dated August 13, 1992, at p. 51. Additionally, following the execution of the Royalty Agreement, Kinley continued to pay Ancira on a per diem basis for his engineering services and travel expenses for the next eighteen month period. Ancira, on his part, located the Lemoore pipeline project and brought it to Kinley for their consideration. Kinley eventually entered into the Lemoore pipeline project. Kinley also paid Ancira royalties on two other pipeline projects, Offutt and Boise, while they were also paying Ancira his independent engineering fees. *See* Deposition Transcript of James L. Kinley, dated August 13, 1992, a pp. 14–17. It is clear that Paragraph 1 of the Royalty Agreement does not expressly state that Ancira is obligated to exclusively bring pipeline opportunities to Kinley. It is also clear that Paragraph 1 does not state that Ancira is entitled to engineering fees in addition to the royalties pursuant to the Agreement. However, "a promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Wood v. Lucy, Lady Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917) (Cardozo, J.).

▇▇▇▇▇ The court finds that the parties' state of mind and intentions as to Paragraph 1 of the Royalty Agreement are the main issue in this matter. If Kinley's version proves to be the correct one, Ancira's claim for payment for his services would be evidence that he gave no valid consideration when entering into the Royalty Agreement. However, if Ancira's version is more credible, then Ancira supplied valid consideration for the Royalty Agreement by agreeing to forego any discussions and negotiations for pipeline opportunities with any other companies. As stated above, summary judgment is usually unwarranted when state of mind is at issue. *Wakefield, supra.* The state of mind exception, however, is only appropriate where solid circumstantial evidence exists to prove the non-moving party's case. *Clements v. County of Nassau*, 835 F.2d 1000, 1005 (2d Cir.1987). The court finds that such circumstantial evidence does exist, and that, therefore, partial summary judgment is not warranted at this time.

Kinley relies on *Manufacturers Hanover Overseas Capital Corp. v. Southwire Co., supra*, and *Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.*, 906 F.2d 884 (2d Cir. 1990), to support its contention that, as Ancira asserted at his deposition that, based on his past custom and practice with Kinley, he could, in addition to obtaining a 4% royalty on certain pipeline projects, separately invoice Kinley for various services relative to procurement of pipeline projects, there was a failure to consideration as a matter of law. However, this contention carries its own ref-

utation as it assumes that Paragraph 1 of the Agreement clearly and unambiguously indicates that the 4% royalty was the only form of compensation Ancira was entitled to receive following the execution of the Agreement. As previously discussed, Paragraph 1 does not expressly affirm this proposition, and, contrary to Kinley's position, the evidence presented by Ancira reasonably supports the conclusion that this was, in fact, not the case. Indeed, Kinley's own conduct in honoring, without objection, Ancira's invoices for engineering services, including invoices which may have included time devoted by Ancira to procurement and related negotiations, for a period of time following the execution of the Agreement, as well as Kinley's own statements as reflected in the correspondence to Ancira of September 3, 1990, September 18, 1990 and October 8, 1990 are more consistent with Ancira's understanding of the purpose of the Agreement than with Kinley's understanding. The conclusion that there are, at a minimum, material issues of fact as to the parties' contentions under the Agreement is, therefore, consistent with the admonition in *Metropolitan Life Insurance Co., supra* that courts should enforce contracts consistent with the parties' intentions and not create an ambiguity on the basis of one party's interpretation of contract language "whose meaning is otherwise plain." *Metropolitan Life Insurance Co., supra,* at 889.

Kinley's reliance on *Manufacturers Hanover Overseas Capital Corp., supra,* is also misplaced. Unlike Ancira's position in the instant case, the conduct of the defendant in that case alleged to constitute consideration for a supposed agreement to modify a guarantee was not new consideration, but, rather, only a different form of compliance with the defendant's preexisting legal obligation to guarantee timely payment on a note. Here, Ancira's formal agreement to "continue" to bring pipeline opportunities and perform related services, as described in Paragraph 1 of the Agreement, cannot constitute old or no consideration as it is undisputed that there had been no prior written contract between Kinley and Ancira creating any mutual, or even unilateral, contractual obligations with respect to finding new pipeline opportunities.

Ancira's express promise to continue to assist Kinley in obtaining economically attractive and acceptable pipeline deals may well, under New York's deferential approach to the adequacy of consideration, *see Apfel v. Prudential–Bache Securities, Inc., supra,* be found to be valid consideration in itself, even if it is determined that Ancira did not obligate himself to assist Kinley on an exclusive basis. The court notes that Kinley has not supplied any New York case, nor has the court found any, to support Kinley's position, on the facts present here, that there has been a failure of consideration to support the incentive contract at issue.

Moreover, if it should be concluded that Ancira was not obligated to act exclusively as a finder or locator of pipeline projects for Kinley, there still would not necessarily be a failure of consideration. Paragraph 1 of the Agreement may be reasonably construed to require payment of the royalties upon the location of a suitable project by Ancira and acceptance of the project by Kinley, as in the case of the Lemoore pipeline project. It would not necessarily be inconsistent that the parties intended that Ancira would also continue to receive other compensation for his engineering services in connection with the pipeline projects. The fact that James H. Kinley and Ancira specifically agreed to the Commission Agreement to provide Ancira with compensation based on his claim of lost engineering fees on the Lemoore project where the engineering services on that project were to be performed by another company supports such an interpretation. *See* Exhibit D, Notice of Motion for Summary Judgment, Interrogatory No. 15, Defendant's Answers to Plaintiff's Interrogatories, dated June 26, 1992. In addition, the court notes that Kinley was not required to accept new pipeline opportunities and generate positive cash flow prior to Ancira being compensated under the Agreement. Therefore, even if Ancira found and located new pipeline opportunities and performed the services outlined in the Agreement in order to present such opportunities to Kinley, it is possible that Kinley would not accept the proposed projects, or that the projects, even if accepted, would not generate a positive cash flow. In

such a case, according to Kinley's interpretation of the Agreement, Ancira would be providing his expertise to Kinley without compensation. The risk of non-acceptance of a project or its achieving negative cash flow could be considered a detriment to Ancira, the promisor, and, in itself, to be valid consideration for the contract.

Alternatively, the court may conclude that, even if Ancira's insistence on being paid for services in addition to the royalties constitutes a failur^ of consideration for the Royalty Agreement, the fact that Kinley routinely honored and paid Ancira's invoices for almost a two year period after the execution of the Royalty Agreement may be construed as evidence of Kinley's acceptance of Ancira's understanding of the Agreement. The court notes that James L. Kinley's letter to Ancira, dated September 3, 1990, while strongly voicing his disapproval of Ancira's alleged failure to provide a set of engineering drawings for the Lemoore project, and Ancira's seeming unwillingness to train Kinley staff so that engineering services could be done in-house, never disputed the fact that Kinley was, at that point in time, paying Ancira royalties, commissions, engineering fees and travel expenses, or that Ancira was entitled to these payments. Additionally, J.L. Kinley's letter to Ancira, dated October 8, 1990, reconfirmed Kinley's obligation to make royalty payments to Ancira under the Royalty Agreement, while stating that Ancira's refusal to negotiate tariffs required Kinley to assign this task to in-house staff. *See* Exhibit 7, Opposing Affidavit of Defendant. The letter fails to intimate that Kinley considered Ancira's unwillingness to provide this service as either a breach of the Royalty Agreement or a failure of consideration as Kinley now contends. Whatever responsibilities Ancira had not completed to J.L. Kinley's satisfaction at that point apparently did not, in J.L. Kinley's mind, as indicated by his letter, disqualify Ancira from receiving royalties on the pipeline projects subject to the Royalty Agreement.

Finally, an analysis of Paragraph 1 of the Royalty Agreement leads to the reasonable conclusion that the work which Ancira was required to do in order to obtain royalties on a project was to provide enough information to Kinley so that Kinley could make an informed decision regarding "whether to acquire, own and operate proposed projects." See Paragraph 1 of the Royalty Agreement. It does not appear that it was contemplated that any and all future work done by Ancira would be totally compensated by royalty payments as opposed to consulting fees. For example, Kinley strongly contends that Ancira's consideration failed because he did not continue to provide tariff and negotiation services in connection with the Lemoore project. However, the court notes that there is no specific reference to tariff agreement negotiations in Paragraph 1 of the Agreement as a required service by Ancira as a condition of entitlement to a royalty. Whether the language in Paragraph 1, *i.e.,* "negotiate with the other parties on behalf of Kinley" was intended to include tariff matters as asserted by Kinley is in itself a material fact issue. At a minimum, the disputed paragraph of the Agreement is open to interpretation based on the facts and circumstantial evidence of the actions of both Kinley and Ancira prior to the formation of the Royalty Agreement and following the Agreement's execution. Therefore, the court finds that genuine issues as to material facts remain disputed, and, as such, summary judgment is not appropriate.

## 2. *Stay of Discovery*

Kinley, in its motion for partial summary judgment, requested that discovery be stayed while the motion was pending. It appears to the court that discovery between the parties has not been ongoing during the pendency of this motion, and, therefore, the request for a stay is moot. The court will not direct a stay of discovery pending Judge Arcara's decision based on this Report and Recommendation, given that it is recommended that the summary judgment motion be denied. However, the parties may voluntarily agree to stay discovery pending Judge Arcara's ruling, if desired.

## *CONCLUSION*

Based on the foregoing discussion, I recommend that Plaintiff Kinley's motion for partial summary judgment be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

DATED: December 21st, 1993.