Keith.M. KEARNEY, et al., Plaintiffs,

v.

Michael V. JANDERNOA,
et al., Defendants.

No. 1:95–CV–823.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 21, 1997.

John E. Anding, Drew, Cooper & Anding, Grand Rapids, MI, Steven E. Cauley, Steven E. Cauley, PA, Little Rock, AR, Milton Clay Ragsdale, M. Clay Ragsdale Law Offices, Birmingham, AL, for Plaintiffs.

Ellen S. Carmody, Law, Weathers & Richardson, Grand Rapids, MI, Peter J. Meyer, Gardner, Carton & Douglas, Chicago, IL for Michael J. Jandernoa, Lonnie L. Smith, Richard G. Hansen, M. James Gunberg, Steven N. Hutchinson, Robert P. Lasner, Mark Olesnavage, F. Folsom Bell, William C. Swaney, Ralph E. Klingenmeyer, Perrigo Co.

Gregory G. Timmer, Rhoades, McKee, Boer, Goodrich, & Titta, Grand Rapids, MI, Michael B. Reuben, Gordon, Altman, Butowsky, Weitzen, Shalov & Wein, New York City, for Henry L. Hillman, C.G. Grefenstette.

William K. Holmes, Warner, Norcross & Judd, L.L.P., Grand Rapids, MI, Dennis E. Glazer, Davis, Polk & Wardwell, New York City, for J.P. Morgan Securities, Ltd., J.P. Morgan Securities, Inc., Morgan Stanley & Company, Inc., Morgan Stanley International, Smith Barney Shearson, Inc., Dean Witter Reynolds, Inc., Dean Witter International Ltd.

## OPINION

QUIST, District Judge.

This case is a derivative action against, among others, officers and directors of Perrigo Company ("Perrigo"). Before this Court is a motion to dismiss filed by Defendants Henry L. Hillman and C.G. Grefenstette ("Hillman Defendants").

In October of 1993, a secondary public offering was held of 13,000,000 shares of Perrigo stock. Plaintiffs bring this derivative suit against, among others, the Hillman Defendants on several grounds, including: 1) "breach of fiduciary duty in misappropriating and misusing internal proprietary non-public material adverse corporate information to personally profit by illegal insider trading" in Perrigo stock, and 2) "entering into an illegal indemnification agreement with J.P. Morgan Securities Ltd., J.P. Morgan Securities, Inc., Morgan Stanley International, Morgan Stanley & Court., Incorporated, Smith Barney

Shearson Inc., Dean Witter Reynolds Inc., and Dean Witter International Ltd. to hold them harmless from any suits seeking damages for violating the securities laws." (Complaint at 1–2.)

The Hillman Defendants bring this motion to dismiss, claiming that Plaintiffs have failed to state any facts that would establish the Hillman Defendants as "controlling shareholders" of Perrigo with corresponding fiduciary duties. The Hillman Defendants claim that, as a result, they could not have breached any fiduciary duties to Perrigo or its minority shareholders. Additionally, the Hillman Defendants allege that the underwriting agreement entered into in connection with the October offering, between Perrigo, the underwriters, and selling shareholders, is not void and illegal as alleged by Plaintiffs.

## Discussion

### 1. Legal Standard

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant...." 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991).

In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."

*Allard,* 991 F.2d at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)).

### 2. Fiduciary Duty

In Counts I and II of Plaintiffs' complaint, Plaintiffs allege that the Hillman Defendants, among others, intentionally and negligently breached their fiduciary duty as controlling shareholders of Perrigo. The Hillman Defendants deny that they are controlling shareholders of Perrigo, and, as a result, they claim that Counts I and II against them should be dismissed.

A controlling shareholder of a corporation has a fiduciary duty to the corporation and its minority shareholders. *Priddy v. Edelman,* 679 F.Supp. 1425, 1430 (E.D.Mich. 1988), *aff'd,* 883 F.2d 438 (6th Cir.1989) (citing *In re Sea–Land Corp. Shareholders Litig.,* No. 8453, 1987 WL 11283, at *4 (Del.Ch. May 22, 1987)).[1] A shareholder is a controlling shareholder if " 'it owns a majority of the stock ... or has exercised actual domination and control in directing the corporation's business affairs.' " *Priddy,* 679 F.Supp. at 1430–31 (quoting *In re Sea–Land Corp.,* No. 8453, 1987 WL 11283, at *4).

Majority shareholders are those shareholders who own at least fifty-percent of the outstanding stock of a corporation. *See, e.g., Lewis v. Knutson,* 699 F.2d 230, 235 (5th Cir.1983). At the time of the October offering, Defendant Hillman and Defendant Grefenstette were two of three trustees of a trust beneficially owning 16.4% of Perrigo stock. Defendant Grefenstette was also one of two trustees of a trust beneficially owning

---

1. The district court in *Priddy* looked to Delaware law due to the absence of Michigan law regarding this issue. *Priddy,* 679 F.Supp. at 1430 (citing *Russ v. Federal Mogul Corp.,* 112 Mich.App. 449, 316 N.W.2d 454 (1982)).

4.4% of Perrigo stock. Thus, the Hillman Defendants, in their capacities as trustees, were not majority shareholders.

■ As stated previously, in order for a minority shareholder to be considered a controlling shareholder with corresponding fiduciary obligations, the shareholder must exercise actual domination and control over a corporation's business affairs. *See Lewis,* 699 F.2d at 235 (imposing a fiduciary duty if a minority shareholder exercises actual control and direction over corporate management); *Fry v. Trump,* 681 F.Supp. 252, 256 (D.N.J.1988) (holding that fiduciary relationship exists if there is actual exercise of direction over corporate conduct); *Citron v. Fairchild Camera & Instrument Corp.,* 569 A.2d 53, 70 (Del.1989) (finding that a plaintiff must allege domination by a minority shareholder through actual control of corporate conduct).

■ In their complaint, Plaintiffs allege that the Hillman Defendants were controlling shareholders of Perrigo, not only because they beneficially owned a substantial block of Perrigo stock, but because they acted as a group with the officers and directors of Perrigo in the October offering.[2] Plaintiffs claim that the Hillman Defendants were controlling shareholders because "defendants Hillman, Grefenstette and the Perrigo officers and directors—*acting collectively as a group*—control Perrigo.... defendants Hillman and several of the Perrigo officers and directors are known to have acted as a group on at least two occasions: the first being the leveraged buyout of Perrigo and the second being the $443 million offering of Perrigo stock in October of 1993." (Plaintiffs' Response at 8–9.)

Plaintiffs have failed to allege any facts that would lead this Court to believe that the Hillman Defendants were controlling shareholders of Perrigo. Plaintiffs have asserted nothing more than legal conclusions throughout their pleadings that the Hillman Defendants were controlling shareholders of Perrigo. Accordingly, the Hillman Defendants' motion to dismiss as to Counts I and II will be granted.

■ The Court, however, will allow Plaintiffs leave to amend their complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). At oral arguments, Plaintiffs claimed that they are able to show that the Hillman Defendants had a substantial interest in the October offering and were the principal driving forces behind the offering. Plaintiffs further claim that they are able to show that the Hillman Defendants chose the underwriters involved in the October offering. Therefore, Plaintiffs will be allowed leave to amend their complaint to set forth factual allegations that would support Plaintiffs' claim that the Hillman Defendants were controlling shareholders of Perrigo with corresponding fiduciary duties.

### 3. The Underwriting Agreement

■ Count III of Plaintiffs' complaint requests a declaratory judgment that would void the underwriting agreement between the underwriters, Perrigo, and the selling shareholders ("Underwriting Agreement").[3]

---

2. In *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,* 940 F.Supp. 1101 (W.D.Mich.1996), the plaintiffs alleged that the Hillman Defendants controlled Perrigo because, as a group, they controlled 20.8% of Perrigo common stock, had determined a majority of directors through the October 1993 offering pursuant to a 1988 Hillman Subscription Agreement, controlled two outside directors, and kept in continuous communication with Perrigo corporate officials during the class period. *Id.* at 1134. Based on those allegations, this Court dismissed the control person allegations against the Hillman Defendants. *Id.*

3. "Essentially, an underwriting agreement is a stock purchase agreement in which the underwriter agrees, on behalf of itself and the underwriting syndicate, to purchase a specified number of shares of common stock from the issuer (and any selling shareholders) at a specified price. The underwriting agreement also provides that the underwriter, together with the syndicate, will offer the shares to the public at a price higher than the purchase price. Both the number of shares to be purchased and the price are unspecified at the time the agreement is signed." Ronald M. Loeb & Brian Y. Shin, *Negotiating the Underwriting Agreement,* 854 PLI/Corp 189, 191 (1994).

Plaintiffs claim that the Underwriting Agreement, with its inclusion of an indemnification provision, is void as against public policy. In *Baker v. BP America, Inc.,* 749 F.Supp. 840 (N.D.Ohio 1990), the court explained:

> [i]ndemnification, unlike contribution, simply shifts liability from the wrongdoer to a third party because of either an implied or express obligation of the third party. Most courts find indemnification to be inappropriate in § 10(b) cases as a matter of policy, concluding that a securities wrongdoer should not be permitted to shift its responsibility to another party, especially since federal securities laws are designed not only to compensate, but also to regulate.

*Id.* at 845. Therefore, if a party is at fault, it should not be permitted to avoid liability. *Id.* at 846. *See also Eichenholtz v. Brennan,* 52 F.3d 478, 485 (3d Cir.1995) (finding contractual indemnification against the policy of the federal securities statutes); *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1232 (9th Cir. 1989) (holding that protection by contractual indemnity clauses is against the policy of the Securities Act of 1933, but that the right to contribution is not); *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 549 (D.Colo.1989) (finding that there is no indemnification under Section 11 of the Securities Act or 10(b) of the Exchange Act, but finding contribution acceptable).[4] However, the characterization that "as a matter of law indemnity is not available for securities law violations" has been held to be overbroad and too simplistic. *See Arden Way Assoc. v. Boesky,* 664 F.Supp. 863, 865 (S.D.N.Y.1987). The *Arden Way* court elaborated:

> [a]s a matter of federal law, the crucial "relevant fact" in determining whether indemnification for violations of the securities laws is available is "whether the defendant acted with actual knowledge of falsity or reckless disregard for the truth." ...
> Under both federal securities laws and New York law whether indemnification is available may depend on various questions of fact such as whether a party is personal-

ly at fault, actually contributed to an injury, incurred merely vicarious or imputed liability, or had actual knowledge of alleged misstatements."

*Id.* (citations omitted).

In the instant case, the language of the Underwriting Agreement shows that the Underwriting Agreement does not apply to "losses, claims, damages and liabilities caused by any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement or the Prospectus ... or any omission or alleged omission to state therein a material fact required to be stated therein." (Underwriting Agreement at 23.) The Underwriting Agreement provides in effect that there is no indemnification if the party seeking indemnification is at fault. Plaintiffs assert that the Underwriting Agreement was an "integral part of the scheme" to sell stock while concealing adverse material information. (Complaint at 25.) Plaintiffs further assert that the Underwriting Agreement protected the underwriters and selling shareholders "from any adverse consequences of their participation in the scheme." (Complaint at 31.) As such, this Court finds that Plaintiffs allegations that the Underwriting Agreement is void as against public policy sounds in fraud. *See Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 288 (3d Cir.1992) (finding that the plaintiffs did not allege ordinary negligence but alleged "averments" of fraud by referencing the defendants' intentional and reckless misrepresentation of material facts). Therefore, such an allegation must be stated with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs have failed to do so, and, thus, have failed to state a claim upon which relief can be granted.

■ Plaintiffs further assert that the Underwriting Agreement is void due to lack of consideration. This Court must look to Michigan conflict of law rules to determine which law should govern this dispute. *See Banek, Inc. v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357, 361 (6th Cir.1993). Under Michigan law, a contractual choice of law provision will govern unless either:

---

**4.** Sixth Circuit references to the issue of indemnification in a case such as the present are some-

what rare. *See Baker v. BP America, Inc.,* 749 F.Supp. 840, 845 (N.D.Ohio 1990).

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.

*Banek*, 6 F.3d at 361. The Underwriting Agreement specifies that the law of the State of New York will govern. Moreover, this Court finds no reason, and the parties have alleged no reason, to apply the laws of any other state. Therefore, this Court will look to New York law in determining whether the Underwriting Agreement is void for lack of consideration.

■ The court in *Kinley Corp. v. Ancira*, 859 F.Supp. 652 (W.D.N.Y.1994), discussed consideration under New York law:

A contract which does not require performance by each party is unenforceable for lack of consideration. If the promisor loses nothing, and the promisee acquires nothing by an arrangement, there is no valid consideration. A benefit to a promisor or a detriment to a promisee is sufficient consideration for a contract.... "Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial as long as it is acceptable to the promisee." Absent fraud or unconscionability, the adequacy of the consideration is not a proper subject for judicial review, rather, it is enough that something of "real value in the eye of the law" is exchanged.

*Id.* at 657 (citations omitted). *See also Daniel Goldreyer, Ltd. v. Van De Wetering*, 217 A.D.2d 434, 630 N.Y.S.2d 18, 24 (1995) (finding that under New York law the issue of adequate consideration for a contract is generally a question of fact, the value is not crucial as long as it is acceptable to the parties, and even the slightest consideration may support the most onerous contractual obligation). Furthermore, even if a promisor realized no concrete benefit from an agreement, a promisee who has incurred a specific, bargained for legal detriment may enforce

the promise. *Holt v. Feigenbaum*, 52 N.Y.2d 291, 437 N.Y.S.2d 654, 657–58, 419 N.E.2d 332, 336 (1981).

The Underwriting Agreement provided "indemnification when the party seeking to be indemnified—be it an Underwriter, a Selling Shareholder, or *Perrigo* itself—did not furnish the alleged misstatement or omission that has given rise to potential liability." (Motion at 16.) As written, the Underwriting Agreement seems to protect Perrigo as well as the underwriters and selling shareholders. Therefore, on its face, the Agreement is supported by adequate consideration. Plaintiffs claim that "substantial obligations and liabilities [were] hoisted onto [Perrigo]" and "Perrigo recovered not a penny nor a benefit." (Complaint at 3.) However, Perrigo did not have to realize any benefit from the Agreement in order to make the Agreement valid. *See Holt*, 437 N.Y.S.2d at 657–58, 419 N.E.2d at 336. Furthermore, Plaintiffs' allegation that the Underwriting Agreement is void due to lack of consideration sounds in fraud. *See* 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, Corbin on Contracts §§ 5.15 (1995) (disparity of value is corroborating evidence of fraud); *Kinley*, 859 F.Supp. at 657 (holding that only in instances of fraud is judicial review of adequacy of consideration proper). Therefore, such an allegations must be stated with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs have failed to do so, and, thus, have not stated a claim upon which relief can be granted. Accordingly, the Hillman Defendants' motion to dismiss as to Count III will be granted.

For the same reasons the Court is allowing Plaintiffs leave to amend their complaint as to Counts I and II, the Court will also allow Plaintiffs leave to amend their complaint as to Count III to include factual allegations that would support Plaintiffs' claim that the Underwriting Agreement is void and illegal. *See* Fed.R.Civ.P. 15(a).

### *Conclusion*

For the foregoing reasons, the Hillman Defendants' motion to dismiss Counts I, II, and III of Plaintiffs' complaint will be **GRANTED.** Plaintiffs will be allowed twen-

ty-one (21) days from the date of the Order to be filed with this Opinion to amend their complaint to set forth factual allegations that would support Plaintiffs' claim that the Hillman Defendants were controlling shareholders of Perrigo with corresponding fiduciary duties, and to support their claim that the Underwriting Agreement is void and illegal.

An Order consistent with this Opinion will be filed.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that the motion to dismiss by Defendants Hillman and Grefenstette (docket no. 11) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs are allowed twenty-one (21) days from the date of this Order to amend their complaint to set forth factual allegations that would support Plaintiffs' claim that the Hillman Defendants were controlling shareholders of Perrigo with corresponding fiduciary duties, and to support their claim that the Underwriting Agreement is void and illegal.