OPINION OF THE COURT
Carol Robinson Edmead, J.
In this breach of contract action, defendant WBR Management Corp. moves for summary judgment dismissing the complaint of the plaintiff, NCSPlus Incorporated and for a trial on defendant’s counterclaims for breach of the same contract, conversion, and misrepresentation.*
Factual Background
According to the complaint, plaintiff, a collection agency, entered into a “Service Contract” with defendant to collect money on defendant’s behalf on defendant’s accounts receivable (the contract). Plaintiff claims that defendant withdrew its accounts receivable and failed to pay plaintiff monies due under the contract in the amount of $46,550.96 since November 13, 2009.
In support of dismissal, defendant argues that because plaintiff, a debt collection agency, failed to allege that it is duly licensed pursuant to Administrative Code of the City of New York § 20-489 (a), and failed to allege its licensing information as required pursuant to CPLR 3015 (e), the complaint should be dismissed.
Defendant also contends the “withdrawal fee” upon which plaintiffs claim is based is an unenforceable penalty. If defendant should withdraw any of its accounts for any reason, the contract awards plaintiff with a withdrawal fee, or liquidated damages, amounting to plaintiffs full fee that it would receive under the contract had plaintiff fully performed and collected 100% of the account withdrawn. Defendant paid plaintiff $1,000 upon signing the contract to collect on 20 open accounts *230 constituting a total debt of $149,701.89, only to receive $750 in return over a two-year period. The 20 accounts represented rent monies owed by former tenants of buildings managed by defendant. Thus, such withdrawal fee is an unenforceable penalty as it bears no relation to the probable loss and is disproportionate to the probable loss plaintiff would sustain upon defendant’s withdrawal of an account from plaintiffs collection service. The penal nature of the withdrawal fee is further established given that the contract has no expiration term. Thus, defendant must either leave its accounts receivable with plaintiff, regardless of whether plaintiff performs under the contract or whether plaintiff withdraws the accounts and pay plaintiff its full fee as if all accounts had been fully collected.
Defendant also argues that the contract is unenforceable because it lacks consideration. There is no term after which it expires, and the withdrawal fee penalizes defendant for withdrawing any account from plaintiff. Thus, plaintiff can make no effort to collect the debts referred by defendant, and still earn all possible fees, as if plaintiff collected 100% of every outstanding dollar on one of defendant’s accounts. Thus, the contract is more of a financial benefit to plaintiff to do nothing and wait for plaintiff to withdraw its accounts, demonstrating the lack of any quid pro quo.
Further, plaintiff breached the implied covenant of good faith and fair dealing. At the time defendant withdrew its accounts from plaintiff, many of them were nearing the statute of limitations deadline. Plaintiff had not forwarded any of defendant’s accounts to any attorney for processing, and such failure placed defendant in a position to choose between doing nothing and allowing the statute of limitations to run, or to withdraw the account and trigger the withdrawal fee clause. Plaintiffs failure to actively collect on the accounts and wait for defendant to withdraw its accounts constitutes a breach of the implied covenant of good faith and fair dealing.
Defendant argues that all of the above factors render the contract unconscionable. Defendant notes that only the front page of the double-sided contract was faxed to defendant for signature, and thus, defendant was unaware of the withdrawal fee until this action was commenced. Therefore, defendant did not have the benefit of reviewing the contract’s withdrawal fee clause.
In opposition, plaintiff argues that even though plaintiff is a licensed debt collection agency, “this is not a consumer credit *231 transaction,” but a commercial claim, and thus, there is no requirement that licensing information be included in the complaint.
Further, the withdrawal fee clause is appropriate to protect the plaintiff in the event defendant unilaterally withdraws the claims after collection services are performed and/or monies received by the client prior to the withdrawal without plaintiff s knowledge. Thus, the fee is not a penalty, but a reasonable and bargained for condition of plaintiff’s collection work. It just obligates defendant to pay the fee that would have been earned if the claim were collected; it does not add, assess or charge any additional monies.
Defendant’s interpretation is unreasonable, because if plaintiff does not perform or collect monies, no fee will be earned by plaintiff. It is irrational to assume that plaintiff would withhold performing the collection activities upon the hope that defendant will eventually withdraw its accounts. In any event, plaintiff performed collection services for defendant.
Further, the contract is supported by consideration, such consideration being the plaintiffs attempts to collect monies owed to defendant from third parties. Plaintiff undertook collection efforts and defendant compensated plaintiff for such efforts. Whether the defendant entered into a good deal is not for the court to determine.
And, the breach of covenant of good faith and fair dealing and unconscionability arguments lack merit and are irrelevant to this standard collection agreement.
Plaintiff also points out that the defendant’s signature on the first page is beneath an acknowledgment that says that it read the reverse side of the contract and understood its terms and conditions. As a manager of properties for landlords, defendant cannot claim ignorance of straightforward terms in a two-page agreement. And, defendant paid $750 pursuant to the second page of the contract.
Discussion
To succeed on a summary judgment motion, a movant must establish its cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in its favor (CPLR 3212 [b]), and to demonstrate, by advancing sufficient “evidentiary proof in admissible form,” the absence of any material issues of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Winegrad v New York Univ. Med. Ctr., 64 NY2d *232 851, 853 [1985]). Where the proponent of the motion makes a prima facie showing of entitlement to summary judgment, the burden shifts to the party opposing the motion to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action (Vermette v Kenworth Truck Co., 68 NY2d 714, 717 [1986]; Zuckerman, 49 NY2d at 560, 562).
Like the proponent of the motion, the party opposing the motion must set forth evidentiary proof in admissible form in support of his or her claim that material triable issues of fact exist, requiring a trial of the action (Zuckerman at 562).
First, the court finds that defendant’s argument based on plaintiffs alleged failure to allege that it is licensed and failure to allege its licensing information lacks merit. It is undisputed that plaintiff is a debt collection agency, and required to be licensed as such pursuant to Administrative Code of the City of New York § 20-489 (a). CPLR 3015 (e) provides:
“License to do business. Where the plaintiffs cause of action against a consumer arises from the plaintiffs conduct of a business which is required by state or local law to be licensed by the department of consumer affairs of the city of New York . . . the complaint shall allege, as part of the cause of action, that plaintiff is duly licensed and shall contain the name and number, if any, of such license and the governmental agency which issued such license; provided, however, that where the plaintiff does not have a license at the commencement of the action the plaintiff may, subject to the provisions of rule thirty hundred twenty-five of this article, amend the complaint with the name and number of an after-acquired license and the name of the governmental agency which issued such license or move for leave to amend the complaint in accordance with such provisions. The failure of the plaintiff to comply with this subdivision will permit the defendant to move for dismissal pursuant to paragraph seven of subdivision (a) of rule thirty-two hundred eleven of this chapter.” (Emphasis added.)
While CPLR 3015 (e) does not define “consumer,” it is noted that CPLR 105 (f) provides that “[t]he term ‘consumer credit transaction’ means a transaction wherein credit is extended to an individual and the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes.” Thus, a “consumer credit transaction” is *233 a transaction that involves a purchase or loan for “personal, family or household purposes” (Patrick M. Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3015:6, citing Matter of Migdal Plumbing & Heating Corp. (Dakar Devs.), 232 AD2d 62, 65-66 [1st Dept 1997] [noting that while the term “consumer” is undefined in the statute, it “may reasonably be construed to apply to a person, family or household”]; Bayonne Block Co. v Porco, 171 Misc 2d 684 [Civ Ct, Bronx County 1996] [declining to permit another contractor to invoke CPLR 3015 (e)]). The contract herein is not between a debt collection agency and a consumer as that term is contemplated under CPLR 3015 (e). It is between the debt collection agency and a merchant. Therefore, as the agreement at issue does not constitute a consumer credit transaction, dismissal based on CPLR 3015 (e) is unwarranted.
Further, the case, Centurion Capital Corp. v Druce (14 Misc 3d 564 [Civ Ct, NY County 2006]), cited by defendant in support of its position is factually distinguishable. In Centurion, the plaintiff commenced an action against the defendant to recover on an alleged credit card agreement. Plaintiff was a debt collection agency that had purchased defendant’s credit card debt. Defendant counterclaimed that plaintiff had engaged in deceptive business practices and sought costs and attorney’s fees. Plaintiff moved for summary judgment and to dismiss defendant’s counterclaims. Defendant cross-moved to dismiss the complaint on the grounds that plaintiff was an unlicenced debt collection agency. The issue was whether plaintiff was an unlicensed debt collection agency under the Administrative Code of the City of New York. The court found that plaintiff was a debt collection agency required to be licensed, and as such, must satisfy CPLR 3015. Since plaintiff did not comply with the CPLR, the complaint was dismissed. However, unlike the defendant in Centurion Capital Corp., CPLR 3015 (e) does not apply to the complaint herein by a nonconsumer.
Further, it cannot be said, as a matter of law, that plaintiff breached the implied covenant of good faith and fair dealing inherent in every contract (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]). Here, assuming there was a valid contract between the parties, and the plaintiff was obligated to make efforts to collect on defendant’s accounts receivable, it cannot be said that plaintiff failed to make good faith efforts to collect on these accounts. “If the plaintiff simply sat back and did nothing, and waited for the defendant to *234 eventually withdraw these uncollected claims, such action would clearly be a breach of the plaintiffs implied covenant of good faith and fair dealing” (National Credit Sys., Inc. v Veterinary Emergency Ctr. P.C., 11 Misc 3d 1060[A], 2006 NY Slip Op 50323[U], *4 [2006]). However, defendant, as the movant, failed to establish with any admissible evidence, that plaintiff did absolutely nothing to collect on the debts so as to breach the implied covenant of good faith.
Likewise, defendant failed to establish, as a matter of law, that the contract was unconscionable. As this court recently stated in Vilella v AT&T (35 Misc 3d 1224[A], 2012 NY Slip Op 50853[U] [2012]), “As a general proposition, unconscionability [is] a flexible doctrine with roots in equity” (Matter of State of New York v Avco Fin. Serv. of N.Y., 50 NY2d 383, 389 [1980]). Generally, a contract will only be held to be unconscionable if it “was both procedurally and substantively unconscionable when made” (Gillman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988]). Examination of the “procedural element of unconscionability requires [scrutiny] of the contract formation process and the alleged lack of meaningful choice” (Lawrence v Graubard Miller, 48 AD3d 1, 6 [1st Dept 2007]). “It requires ‘some showing of “an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party” ’ ” (Gendot Assoc., Inc. v Kaufold, 56 AD3d 421, 423 [2d Dept 2008], quoting Gillman at 10, quoting Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449 [DC Cir 1965]). “The focus is on such matters as the size and commercial setting of the transaction . . . , whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power” (Gillman v Chase Manhattan Bank, 73 NY2d at 11).
While defendant claims that only the front page of the double-sided contract was faxed for signature, it is uncontested that defendant signed the contract, is a property manager for several buildings, and the preprinted language above its signature contains an acknowledgment that the reverse side of the contract was read and understood. Therefore, notwithstanding the claim that the contract has an unenforceable penalty clause and lacks consideration, defendant failed to establish that the contract was both procedurally and substantively unconscionable when made. And, it is unclear whether defendant’s remittance of $750 was pursuant to the second page of the contract.
*235 However, the court finds that the withdrawal fee which serves as the basis of this lawsuit constitutes an unenforceable penalty. As to whether the withdrawal fee is an unenforceable penalty, whether such fee “represents an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances” (JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 379 [2005]). “The burden is on the party seeking to avoid liquidated damages ... to show that the stated liquidated damages are, in fact, a penalty” (id. at 380, citing P. J. Carlin Constr. Co. v City of New York, 59 AD2d 847 [1st Dept 1977]). “Where a provision in a contract provides for stipulated damages that equals the entire price, the primary purpose of such a provision is deemed to constitute a penalty, rather than to provide for compensation, and is unenforceable” (Menorah Home & Hosp. for the Aged & Infirm v Laufer, 19 Misc 3d 1102[A], 2008 NY Slip Op 50473[U], *8 [Sup Ct, Kings County 2008], citing National Telecanvass Assoc. v Smith, 98 AD2d 796, 797-798 [1983]). “Furthermore ‘any reasonable doubt as to whether a provision constitutes an unenforceable penalty or a legitimate liquidated damages clause should be resolved in favor of a construction which holds the provision to be a penalty’ ” (Menorah Home & Hosp. for the Aged & Infirm, 2008 NY Slip Op 50473[U], *8, quoting Vernitron Corp. v CF 48 Assoc., 104 AD2d 409, 409-410 [1984]).
The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties’ intent (see Slatt v Slatt, 64 NY2d 966, 967 [1985], rearg denied 65 NY2d 785 [1985]). “The best evidence of what parties to a written agreement intend is what they say in their writing” (Slamow v Del Col, 79 NY2d 1016, 1018 [1992]). Thus, when the terms of a contract are clear and unambiguous, “the intent of the parties must be found within the four corners of the document” (ABS Partnership v AirTran Airways, 1 AD3d 24, 29 [1st Dept 2003] [citations omitted]), and “[r]ather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement” (Vanship Holdings Ltd. v Energy Infrastructure Acquisition Corp., 65 AD3d 405, 409 [1st Dept 2009] , quoting American Express Bank v Uniroyal, Inc., 164 AD2d 275, 277 [1st Dept 1990], lv denied 77 NY2d 807 [1991]). In determining whether an agreement is ambiguous, the inquiry is “whether the agreement on its face is reasonably susceptible of more than one interpretation” (Chimart Assoc. v *236 Paul, 66 NY2d 570, 573 [1986]). The language of a contract is not ambiguous simply because the parties urge different interpretations (Bethlehem Steel Co. v Turner Constr. Co., 2 NY2d 456, 460 [1957]; see Slattery Skanska Inc. v American Home Assur. Co., 67 AD3d 1, 14 [1st Dept 2009]; Moore v Kopel, 237 AD2d 124, 125 [1st Dept 1997]).
While plaintiff argues that the withdrawal fee is necessary to avoid the possibility that defendant may withdraw accounts for which plaintiff attempted collection efforts, it is uncontested that the amount of the fee itself awards plaintiff with the full amount to which plaintiff would be entitled as if plaintiff had fully collected 100% of the account withdrawn. Thus, plaintiff would not simply be compensated for a reasonable portion of its efforts made; plaintiff would be compensated as if it had collected 100% of the account. It is also uncontested that the contract has no expiration term. Thus, contrary to plaintiffs contention, defendant is obligated to pay a fee, which amounts to the fee plaintiff would have earned upon successful collection efforts, whether or not collection efforts were made on defendant’s accounts in order to effectively terminate plaintiffs services on any account receivable. In opposition, plaintiff failed to submit any evidence indicating that the amount of the withdrawal fee actually represented the anticipated loss of the value of the collection work performed on any one of defendant’s accounts. Having failed to raise an issue of fact that the withdrawal fee clause, under which plaintiff seeks approximately $47,000, bears a reasonable relationship to the amount of probable or actual harm, the clause is an unenforceable penalty, summary dismissal of the complaint is warranted.
Further, defendant also established that the contract is unenforceable for lack of consideration. “It is axiomatic that every contract must be supported by valid consideration” (National Credit Sys., Inc. v Veterinary Emergency Ctr., P.C., 11 Misc 3d 1060[A], 2006 NY Slip Op 50323[U], *2 [Civ Ct, Richmond County 2006], citing Umscheid v Simnacher, 106 AD2d 380 [2d Dept 1984]). “There must be a mutual exchange of promises, a quid pro quo, flowing between the parties” (National Credit Sys., Inc., 2006 NY Slip Op 50323[U], *2-3, citing Banque Arabe et Internationale D'Investissement v Bulk Oil [USA] Inc., 726 F Supp 1411, 1419 [SD NY 1989]). “If the promisor loses nothing, or is not obligated to do anything, and the promisee acquires nothing by the arrangement, there will be no consideration” (National Credit Sys., Inc., 2006 NY Slip Op 50323[U], *3, citing Kinley Corp. v Ancira, 859 F Supp 652, 657 [WD NY 1994]).
*237 The contract fails to contain, and plaintiff failed to point out, any promise or obligation it undertook. Again, it is uncontested that plaintiff is apparently entitled to its fee regardless of whether or not it undertakes any collection services. “While it is true the plaintiff may expend great time and effort in collecting the debts referred by the defendant, under the explicit terms of the agreement, it is not obligated to do so” (see National Credit Sys., Inc., 2006 NY Slip Op 50323[U], *3).
Also again, there is no date by which the contract expires, and in essence, plaintiff, while it argues that it would never do so, can make no effort to collect the debts referred by defendant, and still earn all possible fees as if plaintiff collected 100% of every outstanding dollar on one of defendant’s accounts. The contract is clear and unambiguous on this issue, and therefore, the absence of any consideration on plaintiffs part to support the contract also warrants summary dismissal of the complaint. As the contract is clear and unambiguous, the court need not look to extrinsic evidence, such as whether plaintiff may have undertaken collection efforts, to determine whether the contract is supported by mutual consideration. Thus, the complaint which is based on the contract, is unenforceable for lack of consideration.
However, dismissal of the complaint, in and of itself, does not warrant an automatic, immediate trial on damages on defendant’s counterclaims. Defendant’s papers are silent, and unsupported by any evidence in admissible form, on the counterclaims for breach of contract, conversion or misrepresentation. Therefore, having failed to meet its burden for summary judgment on its counterclaims, this branch of defendant’s motion is denied.
Conclusion
Therefore, based on the foregoing, it is hereby ordered that the branch of defendant’s motion for summary judgment dismissing the complaint of the plaintiff is granted, and the complaint is hereby severed and dismissed; and it is further ordered that the branch of defendant’s motion for a trial on its counterclaims for breach of contract, conversion, and misrepresentation is denied.

 While defendant contends in its motion that it asserted two counterclaims (aff ¶ 6) its answer contains the three counterclaims for breach of contract, conversion, and misrepresentation.