TD Bank, N.A. v K & G Appliance Serv., LLC (2026 NY Slip Op 50393(U))

[*1]

TD Bank, N.A. v K & G Appliance Serv., LLC

2026 NY Slip Op 50393(U)

Decided on March 25, 2026

Supreme Court, Richmond County

Castorina, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 25, 2026
Supreme Court, Richmond County

TD Bank, N.A., Plaintiff,

againstK & G Appliance Service, LLC and GILBERT GALVEZ, Defendants.

Index No. 151791/2024

Attorney for the PlaintiffAngel F. Espinal Meyner and Landis LLP 1 Gateway Ctr Ste 2500Newark, NJ 07102-5323 Phone: (973) 624-2800 E-mail: [email protected]Attorney for Defendants:Jesse Dennis Langel The Langel Firm 30 Wall St Fl 8New York, NY 10005-2205 Phone: (646) 290-5600 E-mail: [email protected]

Ronald Castorina, Jr., J.

I. Statement Pursuant to CPLR § 2219 [a]
The following e-filed documents listed on NYSCEF (Motion No. 004) numbered 57-76, [*2]78-82 were read on this motion. The following papers were considered on plaintiff's motion for summary judgment pursuant to CPLR § 3212: Notice of Motion for Summary Judgment; the Affirmation of Theresa Calsetta in Support, with exhibits; the Affirmation of Angel F. Espinal, Esq., in Support, with exhibits; Plaintiff's Statement of Undisputed Material Facts pursuant to Rule 19-a; Plaintiff's Memorandum of Law in Support; Plaintiff's Affirmation of Legal Fees, Costs and Expenses, with exhibit; Defendants' Affirmation in Opposition, with exhibits, including the Affidavit of Gilbert Galvez and Defendants' Response to Plaintiff's Rule 19-a Statement; Defendants' Memorandum of Law in Opposition; and Plaintiff's Reply Affirmation and Reply Memorandum of Law. 
The Court has considered the foregoing submissions in their entirety, together with the exhibits annexed thereto, and has reviewed not merely the parties' ultimate conclusions, but the full evidentiary and argumentative architecture upon which those conclusions are said to rest. The Court has therefore considered the motion papers, the opposition papers, the reply papers, the contractual text of the parties' loan documents, the payment history and correspondence, the arguments directed to CPLR § 3212, CPLR § 3212 [f], CPLR § 4518 [a], CPLR § 4539 [b], the asserted affirmative defenses, the claimed collateral remedies under Article 9 of the Uniform Commercial Code, and the separate application for attorneys' fees, costs, and expenses. 
II. Findings of Fact
A. The Loan Transaction and the Contractual Documents
This action arises from a commercial lending transaction memorialized in a series of interrelated writings executed on May 11, 2022. On that date, defendant K & G Appliance Service, LLC (the "Borrower") executed and delivered to Plaintiff TD Bank, N.A. ("TD Bank" or the "Bank") an SBA Note evidencing a commercial line of credit in the original principal amount of $40,000. (NY St Cts Filing [NYSCEF] Doc No. 59). On the same date, the Borrower also executed a Loan Agreement governing the manner of repayment, the occurrence of default, and the lender's remedies. (NY St Cts Filing [NYSCEF] Doc No. 60). Defendant Gilbert Galvez (the "Guarantor") executed an Unlimited Guaranty (NY St Cts Filing [NYSCEF] Doc No. 61), and the Borrower executed a Security Agreement granting TD Bank a security interest in the Borrower's business assets (NY St Cts Filing [NYSCEF] Doc No. 62). The plaintiff's motion papers collectively refer to these instruments, together with related loan documentation, as the "Loan Documents," and the Court adopts that usage here. 
The Note and Loan Agreement provided for monthly payments of interest only beginning June 11, 2022, and continuing on a monthly basis through the maturity date of May 11, 2032, at which time all remaining amounts would become due. The contractual interest rate was variable, calculated as 6.5% above the Wall Street Prime Rate, with an initial rate of 10.5%. The Loan Agreement further provided that the Borrower's final payment would include all outstanding principal, accrued interest, costs, expenses, attorneys' fees, and other charges. The Loan Documents expressly provided that failure to make any payment when due constituted an event of default. They further provided that the Borrower's failure to comply with any other covenant, obligation, or condition contained in the Loan Documents would likewise constitute an event of default, and that upon the occurrence of such default TD Bank, at its election, could accelerate the indebtedness and declare all sums immediately due and payable. The Note and Loan Agreement also authorized a late charge equal to five percent of the regularly scheduled payment if a payment remained delinquent for fifteen or more days, and required reimbursement of reasonable costs and attorneys' fees incurred in the enforcement or preservation of the Bank's [*3]rights and remedies.
B. The Guaranty
The Guaranty executed by Gilbert Galvez was not ancillary in the casual sense, but a material inducement to the extension of credit. (NY St Cts Filing [NYSCEF] Doc No. 61). According to the Calsetta affirmation, the Guaranty absolutely and unconditionally guaranteed payment of the Borrower's obligations under the Note, together with other indebtedness owed by the Borrower to TD Bank. (NY St Cts Filing [NYSCEF] Doc No. 58 at ¶22). The same submission states that TD Bank is and always was the holder and owner of the Guaranty. (see id at ¶24). The language of the plaintiff's proof describes the Guaranty as absolute and unconditional, and there is no competent evidence in this record that the Guaranty was ever revoked, rescinded, discharged, or otherwise rendered unenforceable. 
C. The Security Agreement and the Perfection of the Security Interest
The Security Agreement granted TD Bank a security interest in all of the Borrower's business assets as defined therein. (NY St Cts Filing [NYSCEF] Doc No. 62). Plaintiff's motion papers state that, in the event of default, the Security Agreement authorized TD Bank to sell, lease, transfer, or otherwise deal with the collateral or its proceeds, to cause a receiver to be appointed to protect and preserve the collateral, and to invoke all rights and remedies available to a secured creditor under the Uniform Commercial Code. (NY St Cts Filing [NYSCEF] Doc No. 58). TD Bank's security interest was perfected by the filing of a UCC-1 Financing Statement with the New York State Department of State on May 18, 2022, bearing filing number 202205180212155. (NY St Cts Filing [NYSCEF] Doc No. 63). Plaintiff's moving proof further states that TD Bank is entitled to possession of the collateral by virtue of the Security Agreement. (NY St Cts Filing [NYSCEF] Doc No. 58 at ¶27).
D. Plaintiff's Business Records Proof
Plaintiff's evidentiary showing is anchored principally by the affirmation of Theresa Calsetta, an SBA Workout Officer of TD Bank. (NY St Cts Filing [NYSCEF] Doc No. 28). Ms. Calsetta avers that she is charged with administration of the delinquent commercial line of credit loan at issue in this litigation, that she has handled numerous workout and collection matters, and that she is familiar with TD Bank's systems for booking new loans, recording payments, and maintaining loan documentation. (see id). She further avers that she has access to TD Bank's business records relating to this account, including the original loan documents, computerized electronic records indicating the sums outstanding and payments made on the account, and correspondence regarding the account. She states that such records are maintained in the course of TD Bank's regularly conducted business activities, were made at or near the time of the occurrence of the events they reflect by or from information transmitted by a person with knowledge, and are records it is TD Bank's regular practice to keep in the ordinary course of business. (see id). Ms. Calsetta also avers that she reviewed those records and, based upon that review, is personally familiar with the facts and circumstances she sets forth. (see id).
The payment history annexed to the motion is described by Ms. Calsetta as a business record maintained in the normal course of TD Bank's business and used by TD Bank to record and track loan disbursements, borrower payments, and accrual of interest. (see id). She further states that each disbursement appears in the payment history as an "Advance" and that the corresponding increase in the principal balance demonstrates that TD Bank advanced funds to the Borrower. (see id). She also avers that each payment made by the Borrower, together with each disbursement on the Loan, is recorded in the same history. (see id). Thus, the Bank's proof [*4]seeks to show not only the existence of the debt instruments, but also the actual extension of funds, the making and application of payments, the running accrual of interest, and the state of the account when default occurred. (see id).
E. The Payment Default, Declaration of Default, and Acceleration
Plaintiff's proof states that the Borrower failed to make the monthly payment due March 11, 2024, and failed to make the monthly payments due thereafter. (NY St Cts Filing [NYSCEF] Doc No. 64). TD Bank therefore declared the default and accelerated the Loan by correspondence dated July 16, 2024. (NY St Cts Filing [NYSCEF] Doc No. 65). TD Bank reiterated the declaration of default, acceleration, and demand for immediate payment by further correspondence dated August 19, 2024. (see id). The moving papers further state that, notwithstanding those demands, the Borrower and the Guarantor failed to make payment and thereby remained in default under the Loan Documents. 
As of January 27, 2026, plaintiff claimed that a total amount of $38,204.91 was due on the Loan, consisting of $30,446.67 in principal, $7,191.97 in accrued interest, $150.00 in site visit fees, and $416.27 in late fees, with per diem interest thereafter at $11.21 based on a rate of 13.25%. (NY St Cts Filing [NYSCEF] Doc No. 58 at ¶38; 71 at ¶29). Plaintiff also claimed entitlement to loan and collection expenses, including legal fees and costs, as permitted by the Loan Documents. (NY St Cts Filing [NYSCEF] Doc No. 58 at ¶39; 71 at ¶30).
F. The Procedural History of the Action
The Espinal affirmation states that plaintiff commenced this action by summons and verified complaint filed August 31, 2024. (NY St Cts Filing [NYSCEF] Doc No. 67). The Borrower was served through the New York Secretary of State. (NY St Cts Filing [NYSCEF] Doc No. 68). The Guarantor was personally served. (NY St Cts Filing [NYSCEF] Doc No. 69). Plaintiff later withdrew an earlier motion for default judgment and stipulated to extend defendants' time to answer. (NY St Cts Filing [NYSCEF] Doc No. 66 at ¶7). Defendants then filed a verified answer containing eleven affirmative defenses. (NY St Cts Filing [NYSCEF] Doc No. 31). The Espinal affirmation also states that defendants thereafter served combined discovery demands, that TD Bank responded, and that amended responses and documents were later provided in connection with further discovery motion practice. (NY St Cts Filing [NYSCEF] Doc No. 66 at ¶9). Thus, this motion does not come before the Court in a vacuum, but after pleadings were interposed and discovery activity occurred. 
G. Defendants' Opposition
Defendants oppose the motion through an attorney affirmation, memorandum of law, a Rule 19-a response, and the affidavit of Gilbert Galvez. Importantly, defendants do not materially dispute that the Borrower's signature appears on the Note and Loan Agreement, that the Guarantor's signature appears on the Guaranty, or that no monthly payment was made beginning March 11, 2024. Their opposition instead seeks to resist summary disposition by contesting the circumstances of execution, the adequacy of plaintiff's account proof, the propriety of plaintiff's default and acceleration notices, the manner in which plaintiff handled workout discussions, the asserted calculation of the amount due, the site visit fee, and the legal sufficiency of the Calsetta affirmation under the evidentiary rules governing business records and electronic reproductions. 
Defendants' Rule 19-a response admits that the Borrower's signature appears on the Note and Loan Agreement, but disputes the implication that execution was fully knowing and informed. Defendants assert that before signing, a TD Bank representative told the Borrower that [*5]the interest rate would be approximately 8% to 8.5% and did not disclose that the rate was variable. Defendants also assert that the signing occurred outside bank premises and without adequate time or opportunity to review the documents. They further contend that the practical effect of the variable rate and the acceleration provisions were not meaningfully disclosed before signing. 
The opposition memorandum also emphasizes that the Note reflects an initial rate of 10.5%, that the payment history reflects 11.25% as of June 16, 2022, and that multiple rate-change entries later appear in the payment history, reaching 15.00% by July 2023. Defendants argue that these figures materially exceed what Mr. Galvez says he was told by the bank's representative. The opposition further argues that plaintiff's own later representation that it would not enforce an 18% default rate undermines the reliability of the balance asserted. 
Defendants also contest the default and acceleration process. They argue that the July 16, 2024 and August 19, 2024 notices were sent only to a Staten Island address while plaintiff's own complaint identified Mr. Galvez as a Texas resident. (NY St Cts Filing [NYSCEF] Doc No. 79). Mr. Galvez states in his affidavit that whether he received proper notice at his actual known address before acceleration is a factual dispute. (see id at ¶12). He also avers that, after his business encountered financial difficulty, he contacted TD Bank and attempted to work out a payment arrangement, including an offer to pay approximately $400 per month, but was told that the matter had already been sent to counsel and that full payment was required. (see id at ¶13).
Defendants' opposition further attacks the amount due. (see id at ¶19-20). They argue that plaintiff has not established a sum certain because the submissions reflect multiple inconsistent interest rates and no verified accounting that explains how the claimed $38,204.91 was computed across shifting rate periods. (see id). They specifically identify three same-day payment entries and reversals appearing in the payment history, $1,611.77 on June 11, 2024, $2,012.01 on July 11, 2024, and $2,490.28 on August 11, 2024, and contend that plaintiff has not adequately explained those reversals or their impact upon the account balance. (see id at ¶15). Defendants also highlight a $150.00 site visit fee assessed on July 29, 2024, after default and acceleration had already been declared, and note that the photographs attached to plaintiff's motion depict a visit to the Staten Island location while Mr. Galvez avers that he had been in San Antonio, Texas since 2022. (see id at ¶17). 
Finally, defendants contend that the motion is premature under CPLR § 3212 [f], arguing that TD Bank has not disclosed the identities of origination personnel whose representations are directly at issue, has not provided a verified interest calculation, has not explained the three same-day reversals to defendants' satisfaction, and has produced no documentation of the workout conversation. (see id at ¶21). Defendants maintain that such information lies within the Bank's exclusive control and that summary judgment should therefore be denied. 
H. Plaintiff's Reply and the Attorneys' Fees Submission
In reply, plaintiff maintains that the Loan Documents are valid and enforceable, that defendants' contentions are either conclusory or legally irrelevant to the claims asserted, and that the motion is not premature. (NY St Cts Filing [NYSCEF] Doc No. 82). With respect to the reversals, plaintiff explains that reversals occur when checks bounce or ACH payments are returned for insufficient funds and states that the reversals here occurred because of insufficient funds in defendants' TD Bank account. (see id). Plaintiff also addresses the site visit fee and states that SBA guaranty loans require a site visit to inspect collateral and that TD Bank uses a third-party service to conduct such inspections. (see id). Plaintiff also relies on the Note's [*6]contractual payment-application clause to explain why the principal balance remained at $30,446.67 notwithstanding prior payments, namely that payments are first applied to accrued unpaid interest and then to principal. (see id).
Separate and apart from the underlying merits, plaintiff submitted an Affirmation of Legal Fees, Costs and Expenses. (NY St Cts Filing [NYSCEF] Doc No. 73). That submission states that plaintiff incurred legal fees through December 15, 2025 totaling $25,059.50, consisting of 75.9 hours of work by an associate at $250.00 per hour, 4.7 hours by one partner at $360.00 per hour, 3.8 hours by another partner at $300.00 per hour, 4.1 hours by another attorney at $285.00 per hour, 0.3 hours by another associate at $275.00 per hour, and 13.6 hours of paralegal time at $145.00 per hour. (see id). The same submission states that expenses, incurred and anticipated, total $1,591.72 and that a detail fee transaction file list is annexed. (see id; NY St Cts Filing [NYSCEF] Doc No. 74). Thus, plaintiff requests a total of $26,651.22 in attorneys' fees and expenses. The affirmation further asserts that the fees and expenses were incurred as a direct result of prosecuting plaintiff's claims, that they are fair and reasonable for the work necessary to protect plaintiff's rights, and that the legal fees charged are equal to, if not below, prevailing rates for commercial collection and workout matters in New York and Richmond County. 
III. Conclusions of Law
A. The Governing Summary Judgment Standard
Summary judgment remains an exacting but indispensable procedural device. It is designed to provide a prompt, business-like, and economical method of disposing of claims in which an examination of the merits reveals no genuine issue of material fact. It is warranted where there is no genuine issue of any disputed fact and the questions presented are purely legal (see Merritt Hill Vineyards, Inc. v Windy Heights Vineyard, Inc., 61 NY2d 106 [1984]). It relieves congested court calendars and spares litigants unnecessary expense where no material issue exists (see Donadio v Crouse-Irving Mem. Hosp., Inc., 75 AD2d 715 [4th Dept 1980]). It has been characterized as a "fruitful remedy" which, precisely because it is useful, should be encouraged when properly invoked (see Kahn v City of New York, 37 AD2d 520 [1st Dept 1971], affd 30 NY2d 690 [1972]). Where, as the movant contends here, no issue of material fact is presented to justify a trial, the remedy may be exercised "without hesitation" (see Appel v Root, 1962 NYMisc LEXIS 4271 [Sup Ct Kings County 1962], affd 18 AD2d 686 [2d Dept 1962], affd 18 NY2d 843 [1963]; Williams v Lombardini, 238 NYS2d 63 [Sup Ct Broome County 1963]). 
Yet the remedy remains a drastic one and will not be granted unless the movant first establishes a prima facie entitlement to judgment as a matter of law through evidence in admissible form sufficient to eliminate all material issues of fact. Only after such a showing does the burden shift to the opponent to produce evidentiary proof in admissible form sufficient to require a trial of material issues (see Zuckerman v City of New York, 49 NY2d 557 [1980]). The opposing party must "assemble and lay bare" its proof. Suspicion, surmise, conjecture, or conclusory assertion are not enough. The alleged issue must be real and substantial, not feigned, sham, or contrived (see Kornfeld v NRX Techs., Inc., 93 AD2d 772 [1st Dept 1983], affd 62 NY2d 686 [1984]). Courts in this State have consistently held that unsubstantiated conclusory assertions will not defeat summary judgment (see Ihmels v Kahn, 126 AD 701 [1st Dept 1908]; Shields v Stevens, 55 AD2d 1017 [4th Dept 1977]). 
These principles guide the Court's resolution of each branch of the motion, including liability on the Note and Guaranty, the dismissal of affirmative defenses, the assertion of rights [*7]under the Security Agreement and Article 9 of the Uniform Commercial Code, and the separate request for attorneys' fees, costs, and expenses.
B. Plaintiff Has Established Its Prima Facie Entitlement to Judgment on the Note and Loan Agreement
The Court first considers the branch of the motion directed to the Borrower's liability under the Note and Loan Agreement. On this record, plaintiff has made the requisite prima facie showing.
The Loan Documents are before the Court. The Note and Loan Agreement are facially complete and regular. They set forth the original line of credit amount, the repayment structure, the interest rate mechanism, the default provisions, the acceleration clause, the late charge provision, and the contractual reimbursement of enforcement costs and attorneys' fees. The Calsetta affirmation supplies a business-record foundation for the account records. The payment history is identified as the Bank's ordinary business record reflecting disbursements, payments, and accrual of interest. The same affirmation states that the Borrower failed to make the monthly payment due March 11, 2024 and each monthly payment thereafter, that the Bank declared the default and accelerated the debt, and that the indebtedness remained unpaid. On a motion such as this, that showing is sufficient to establish prima facie entitlement to judgment on the debt instruments (see Eur. Am. Bank & Trust Co. v Leonard Masonry, Inc., 107 AD2d 657, 658 [2d Dept 1985]). 
The governing contract law principles, as cited in plaintiff's memorandum, reinforce this conclusion. The construction of an unambiguous contract is a matter of law for the Court (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470 [2004]). When the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the document and the writing must be enforced according to its terms (see ABS Partnership v AirTran Airways, Inc., 765 NYS2d 616 [1st Dept 2003]). Thus, where a note or loan agreement is clear and unambiguous, it is not subject to reformation by post hoc dissatisfaction or unsupported oral recollection, but must be enforced as written. 
Defendants' opposition does not raise a triable issue sufficient to defeat summary judgment on liability. Defendants do not deny that the Borrower signed the Note and Loan Agreement. They do not deny that the Loan was originated by TD Bank. They do not deny that the monthly payment due March 11, 2024 was not made and that subsequent monthly payments were likewise not made. Those facts go to the very marrow of plaintiff's contract claim. Defendants instead seek to avoid the legal effect of those facts by contending that prior to signing, a TD Bank representative represented that the interest rate would be approximately 8% to 8.5% and did not meaningfully explain the variable-rate feature or acceleration provisions. But the Note itself states the initial rate of 10.5% and the variable-rate mechanism. A party who signs a written agreement is ordinarily bound by its terms, and nothing in the authorities furnished by defendants transforms their asserted oral understanding into a triable defense against a facially complete written commercial note. The contention that the documents were signed outside bank premises or without as much time for review as defendants would have liked is similarly inadequate. It does not create a bona fide issue as to whether a binding contract was formed. 
The Court is equally unpersuaded by the argument that the motion must fail because plaintiff's default and acceleration notices were sent to a Staten Island address while defendants say TD Bank knew Mr. Galvez was in Texas. The plaintiff's claim is not dependent upon proof [*8]of any special pre-acceleration indulgence beyond what the Loan Documents require. The Borrower's failure to make the March 11, 2024 payment and each payment thereafter constituted a contractual default in and of itself. The notices sent by TD Bank served to declare that default and accelerate the balance; they did not create the default. Even were the Court to assume some factual dispute regarding whether the notices were sent to the address defendants preferred, that would not erase the admitted nonpayment. At most, it would bear upon equitable rhetoric, not upon the essential liability established by the Note and Loan Agreement. 
Thus, the Court concludes that plaintiff has established liability on the Note and Loan Agreement as a matter of law and that defendants have failed to raise a triable issue sufficient to defeat summary judgment on that branch of the motion.
C. The Calsetta Affirmation and the Bank's Records Satisfy the Evidentiary Requirements Invoked by Defendants
Defendants place considerable weight upon their evidentiary objections under CPLR § 4518 [a] and CPLR § 4539 [b], arguing that the Calsetta affirmation does not adequately authenticate the Bank's electronic records and does not sufficiently connect the payment history to the claimed balance. The Court disagrees.
CPLR § 4518 [a] requires that a business record be made in the regular course of business, that it be the regular course of such business to make the record, and that the record be made at the time of the event or within a reasonable time thereafter. The Calsetta affirmation expressly tracks these requirements. Ms. Calsetta explains her role, her familiarity with the Bank's systems and practices, her access to the relevant records, the regular-course manner in which those records are maintained, the temporal relationship between the recorded events and the entries, and her own review of those records. That is a sufficient evidentiary foundation for the business records at issue. The law does not require the witness to have personally keyed each entry or to have personally observed each loan transaction; familiarity with the recordkeeping system and the creation and maintenance of the records in the ordinary course suffices. 
Nor does CPLR § 4539 [b] avail defendants. Their memorandum treats the electronic character of the records as though it were self-disqualifying. It is not. Properly authenticated reproductions and electronically maintained business records may be considered on summary judgment. The Calsetta affirmation supplies the needed authentication. Defendants' true complaint is not that the records are inadmissible, but that they do not like what the records show or how the Bank has explained them. That complaint goes to weight, not admissibility.
To be sure, the Court has closely examined defendants' challenge to the amount due, especially as to the shifting rate periods, the prior mention of an 18% default rate, the three reversals, and the site visit fee. But those are not defects in the evidentiary foundation. They are objections to the content and interpretation of the records. On this motion record, the Bank's proof is admissible, competent, and sufficient.
D. Plaintiff Has Established Entitlement to Judgment Against the Guarantor
Plaintiff has also established its prima facie entitlement to judgment against defendant Gilbert Galvez under the Unlimited Guaranty. On a motion for summary judgment to enforce a written guaranty, the creditor must prove the existence of an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform (see Davimos v Halle, 35 AD3d 270, 272 [1st Dept 2006], citing City of New York v Clarose Cinema Corp., 256 AD2d 69 [1st Dept 1998]). Once the plaintiff makes such a showing, the burden shifts to the guarantor to establish, through admissible evidence, the existence of a triable issue (see Bank Leumi Trust Co. [*9]v Rattet & Liebman, 182 AD2d 541 [1st Dept 1992]). A guarantor may not defeat summary judgment merely by relying on broad denial or generalized grievance where the plaintiff's motion is supported by detailed documentary proof (see Fed. Deposit Ins. Corp. v Schwartz, 55 NY2d 702 [1981]). 
The proof here meets that standard. The Guaranty was executed contemporaneously with the Loan. The underlying debt has been established. The Borrower defaulted. Demand was made. The Guarantor did not pay. Defendants have interposed no legally cognizable defense peculiar to the Guaranty itself, such as forgery, duress directed specifically to that instrument, or discharge. Instead, they repeat the same generalized assertions advanced by the Borrower concerning rate disclosures and workout discussions. Those assertions do not raise a triable issue as to the Guarantor's liability on an absolute and unconditional guaranty. Plaintiff is therefore entitled to judgment against the Guarantor as a matter of law.
E. The Uniform Commercial Code Issues and Plaintiff's Rights as a Secured Creditor
The Court next addresses the relief sought under the Security Agreement and Article 9 of the Uniform Commercial Code. This branch of the motion is significant. Plaintiff does not merely seek a money judgment; it also seeks to compel the Borrower to make collateral available, to authorize the Bank to take possession and dispose of the collateral, to restrain use of the collateral, and to obtain a writ of replevin and sheriff-assisted seizure if necessary. Those remedies require careful treatment under the UCC and CPLR Article 71.
A security interest is enforceable where value has been given, the debtor has rights in the collateral, and the debtor has signed a security agreement containing a description of the collateral (NY UCC § 9-203). Plaintiff's memorandum properly relies upon that provision. It further cites NY UCC § 9-102 [73], defining "security agreement," and NY UCC § 1-201 [37], defining "security interest," together with NY UCC § 1-201 [44] and Fundex Capital Corp. v Reichard, (172 AD2d 420 [1st Dept 1991]), for the proposition that value is given where money is advanced to the debtor. Perfection is established through filing under NY UCC § 9-310. After default, a secured party may take possession of collateral and may proceed by judicial process under NY UCC § 9-609, and may dispose of collateral in a commercially reasonable manner under NY UCC § 9-610. Plaintiff's papers also cite NY UCC §§ 9-601 and 9-602 as part of the post-default statutory framework. 
The record before the Court demonstrates each prerequisite for attachment and enforcement. First, TD Bank gave value by extending and funding the line of credit. Second, the Borrower had rights in its own business assets. Third, the Borrower signed the Security Agreement, which granted the Bank a security interest in those assets. Thus, the security interest attached under NY UCC § 9-203. The security interest was then perfected by the filing of the UCC-1 Financing Statement with the New York State Department of State on May 18, 2022. Defendants do not dispute the existence of that filing. It follows that plaintiff holds an attached and perfected security interest in the collateral. 
Once the Borrower defaulted, Article 9 remedies ripened. Defendants' opposition does not negate the fact of default. They admit the absence of the March 11, 2024 payment and of subsequent payments. The Security Agreement and the UCC therefore authorize plaintiff to require the Borrower to make the collateral available, to take possession through judicial process, and to dispose of the collateral in a commercially reasonable manner. Defendants' objections concerning notices, workout discussions, and the site visit fee do not deprive plaintiff of these rights. None of those objections erases the Borrower's payment default or invalidates the [*10]attached and perfected security interest.
At the same time, the Court stresses that the exercise of Article 9 remedies remains cabined by the statutory standard of commercial reasonableness and by the terms of the Security Agreement itself. The Court's order authorizing possession and disposition does not authorize arbitrary or oppressive conduct. Rather, it recognizes plaintiff's contractual and statutory rights and directs that any sale, retention, or other disposition of the collateral proceed in a commercially reasonable manner, with proceeds applied as required by the parties' agreements and governing law.
F. Defendants' Affirmative Defenses Are Without Merit and Must Be Dismissed
Plaintiff also seeks dismissal of the affirmative defenses asserted in defendants' verified answer. Once plaintiff established its prima facie case, the burden shifted to defendants to come forward with evidentiary facts supporting their defenses (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). Unsupported and general allegations do not suffice (see Layden v Boccio, 686 NYS2d 763 [1998]; Blue Ridge Bus. Brokers, Inc. v Ros-Mar Club, Inc., 501 NYS2d 132 [2d Dept 1986]). Indeed, FDIC v Schwartz, 55 NY2d 702 [1981], cited by plaintiff, stands as a pointed reminder that summary judgment is appropriate where documentary proof is detailed and the opposing party offers no evidence of an evidentiary nature sufficient to contradict it. 
The first affirmative defense, failure to state a cause of action, cannot survive in the face of the complaint and motion proof establishing the Note, Loan Agreement, Guaranty, Security Agreement, default, acceleration, and nonpayment. The second affirmative defense, improper venue, is unsupported. Plaintiff relied upon CPLR § 503[a] and asserted that a substantial part of the events or omissions giving rise to the claim occurred in Richmond County. Defendants have not furnished persuasive proof requiring a contrary conclusion on this motion record. The third affirmative defense, grounded in alleged misrepresentation regarding interest-rate changes, is insufficient to defeat liability on the executed written instruments for the reasons already discussed. The remaining affirmative defenses are likewise either conclusory, legally insufficient, or unsupported by admissible evidence. None raises a bona fide triable issue. They are therefore dismissed in their entirety.
G. The CPLR § 3212 [f] Prematurity Argument Is Unavailing
Defendants' invocation of CPLR § 3212 [f] does not warrant denial of the motion. CPLR § 3212 [f] is not a talisman automatically barring summary judgment whenever additional discovery could conceivably be imagined. The opposing party must show that facts essential to justify opposition may exist but cannot yet be stated. Here, the essential facts bearing on liability are already established. Defendants admit that the signatures on the operative documents are theirs or appear thereon. They do not deny the existence of the Loan. They do not deny the Borrower's payment default beginning March 11, 2024. The additional discovery they seek, to wit: further information about origination personnel, more detail about the workout process, and more explanation of the reversals, does not negate those facts.
To the extent defendants say they need more discovery about the specific SBA servicing guidelines or the precise circumstances of the workout discussions, such matters do not create a triable issue as to the executed documents and the admitted nonpayment. Nor does the desire for yet more detail about the reversals or the site visit transform this case into one unready for summary adjudication. Plaintiff has already provided a sufficient business-records foundation and an adequate explanation of these items. The Court therefore rejects the claim that the motion is premature.
[*11]H. Plaintiff Has Established the Exact Amount Due Under the Loan
The Court next turns to the precise monetary relief sought. Unlike some records that may establish liability but leave damages for later proof, this record contains sufficient information for the Court to determine the exact sum due.
Plaintiff seeks $38,204.91 as of January 27, 2026, consisting of $30,446.67 in principal, $7,191.97 in accrued interest, $150.00 in site visit fees, and $416.27 in late fees, together with per diem interest of $11.21 thereafter. Defendants' challenges to that sum, while not frivolous in presentation, are ultimately insufficient in substance.
The principal balance of $30,446.67 is adequately supported. Plaintiff's reply explains that, under the Note, payments are applied first to accrued unpaid interest and then to principal. That contractual payment-application clause directly answers defendants' suggestion that prior payments should have reduced principal more substantially. The Court accepts that explanation. Defendants do not offer any alternative calculation demonstrating that the principal figure is wrong. 
The accrued-interest figure of $7,191.97 is also sufficiently established. Defendants' criticism is chiefly that multiple rates appear in the payment history over time and that plaintiff once referenced an 18% default rate before later stating it would not enforce that rate. However, plaintiff's current sworn proof seeks the amount stated in the Calsetta affirmation and the per diem of $11.21 based on a 13.25% rate as of January 27, 2026. Defendants do not supply a competing interest calculation. They identify no mathematical error in the final figure. They merely protest that the rate history was variable and that plaintiff previously mentioned a higher default rate. That is not enough. The existence of variable-rate periods under a variable-rate note does not render the Bank's final sworn interest figure unreliable per se, particularly where the defendants offer no admissible contrary calculation. In the face of the Bank officer's sworn statement and business records, the Court accepts the accrued-interest amount of $7,191.97 and the ongoing per diem of $11.21 from January 28, 2026 through entry of judgment. 
The late charges of $416.27 are contractually authorized and sufficiently supported. The Note provides for a late charge equal to five percent of the regularly scheduled payment for payments fifteen or more days late. Defendants do not deny prolonged delinquency. The Court therefore finds the late fees recoverable. 
The $150.00 site visit fee is also recoverable. Plaintiff explains that SBA guaranty loans require a site visit to inspect certain assets, such as collateral, and that TD Bank uses a third-party service to conduct such inspections. Given the Borrower's default, the existence of collateral, and the Bank's status as secured creditor, the Court finds that the site visit fee falls within the universe of recoverable enforcement-related charges under the Loan Documents and the secured transaction. Defendants' objection that the fee was assessed after acceleration and that the visit occurred at the Staten Island address does not make the fee improper. To the contrary, the lender's need to inspect collateral after default is wholly consonant with its rights as a secured creditor. 
Finally, the three same-day reversals do not undermine the claimed amount. Plaintiff has explained that reversals occur when checks bounce or ACH payments are returned for insufficient funds and states that the reversals here resulted from insufficient funds in defendants' TD Bank account. Defendants offer no competent proof to the contrary and no competing account statement that would reduce the balance. On this record, the reversals corroborate continuing delinquency rather than undermine plaintiff's calculation. 
The Court therefore finds that plaintiff has established the amount due as of January 27, 2026 in the sum of $38,204.91, consisting of $30,446.67 in principal, $7,191.97 in accrued interest, $150.00 in site visit fees, and $416.27 in late charges, together with per diem interest at the rate of $11.21 from January 28, 2026 through the date of entry of judgment. 
I. Attorneys' Fees, Costs, and Expenses
The remaining substantial issue is plaintiff's request for attorneys' fees, costs, and expenses. That issue warrants fuller analysis, both because the Loan Documents expressly provide for the recovery of reasonable attorneys' fees and enforcement costs, and because the Court bears an independent obligation to scrutinize such applications for reasonableness even where contractual entitlement is established.
There is no real dispute here as to entitlement. The Note and Loan Agreement, as described in the moving papers, require reimbursement of reasonable costs and attorneys' fees incurred by TD Bank in connection with enforcement of its rights or the preservation of its remedies. Plaintiff has thus established its contractual entitlement to recover reasonable legal fees and related expenses arising from this action. The question is not whether some fee may be awarded, but what amount is reasonable on this record. 
Plaintiff's fee affirmation requests $25,059.50 in attorneys' fees and $1,591.72 in expenses, for a combined total of $26,651.22. The affirmation supplies the identity of the billing categories, the hourly rates charged, and the number of hours worked by each timekeeper. Specifically, the Bank seeks recovery for 75.9 hours of work by an associate billed at $250.00 per hour; 4.7 hours of partner time at $360.00 per hour; 3.8 hours of partner time at $300.00 per hour; 4.1 hours of attorney time at $285.00 per hour; 0.3 hours of associate time at $275.00 per hour; and 13.6 hours of paralegal work at $145.00 per hour. The affirmation further states that a detailed fee transaction list is annexed and that the fees and expenses were incurred directly as a result of prosecuting plaintiff's claims. The submission also asserts that the rates charged are at or below prevailing rates for commercial collection and workout matters in the State of New York and Richmond County. 
The Court does not doubt that substantial legal work was performed in connection with this action. The litigation included commencement, service upon two defendants, an earlier default motion and its withdrawal, the interposition of an answer with affirmative defenses, discovery demands and responses, the preparation of a summary judgment motion, opposition and reply papers, and the presentation of secured-creditor remedies under the UCC and CPLR Article 71. Nonetheless, the Court's duty is not merely to confirm that work was done, but to determine whether the full amount requested is reasonable under all of the facts and circumstances.
Several features of the fee submission persuade the Court that the amount sought is excessive and must be reduced.
First, the disproportion between the legal fees sought and the amount recovered is striking. The underlying debt established by plaintiff is $38,204.91. The requested attorneys' fees and expenses total $26,651.22. Thus, the requested fees and expenses amount to nearly seventy percent of the debt itself, while the attorneys' fees alone amount to roughly two-thirds of the recovery. Proportionality is not, standing alone, dispositive. There is no iron rule that attorneys' fees must maintain some predetermined ratio to the amount in controversy. Yet a fee request that approaches the magnitude of the underlying recovery in what is fundamentally a commercial collection action necessarily invites close judicial scrutiny. The Court finds that such a ratio is [*12]facially disproportionate here.
Second, the nature of the case weighs against the full amount sought. This is not sprawling commercial litigation involving multiple parties, expert witnesses, extended evidentiary hearings, or novel legal doctrines. It is, at bottom, a commercial loan enforcement action based on a note, a guaranty, a security agreement, and business records. It was resolved on papers. No trial occurred. No hearing was held. No expert proof was adduced. Although defendants mounted opposition and invoked a variety of procedural and evidentiary objections, the matter remained what plaintiff itself portrayed it to be: a debt-enforcement proceeding arising from a failed loan relationship. In such a case, the Court must be attentive to whether the hours expended and the staffing employed were commensurate with the actual complexity of the litigation.
Third, the fee application reflects layered staffing by multiple billing professionals at different rates in a matter that did not, on this record, require such breadth of attorney involvement. The request includes substantial associate time, multiple partner timekeepers, additional attorney time at intermediate rates, and paralegal time. The Court is not prepared to say that any use of multiple professionals is per se improper. It is not. Yet where a relatively straightforward matter is staffed by several attorneys and a paralegal, the Court may reasonably infer some measure of overlap, duplication, or inefficiency, particularly absent a more pointed demonstration that each layer of review and participation was strictly necessary. The Court finds that the submission, while sufficient to establish that work was performed, does not compel the conclusion that every billed hour at every level was reasonably necessary to prosecute this action to summary judgment.
Fourth, the sheer volume of hours is high in relation to the procedural posture and complexity of the case. The 75.9 hours of associate time alone are substantial. When partner hours, other attorney hours, and paralegal hours are added, the total professional time reflected in the application becomes considerable. The Court recognizes that motion practice can be time-consuming and that opposition may require reply work. Still, in an action resolved on motion papers and grounded in a familiar suite of commercial lending documents, the Court finds that the aggregate hours claimed exceed what was reasonably necessary to vindicate plaintiff's rights.
Fifth, the expense component itself contains a feature that supports reduction. Plaintiff's affirmation states that the requested expenses are "incurred and anticipated." A court may award actual, documented, recoverable expenses. It does not follow that anticipated expenses, not yet incurred at the time of the application, must be allowed in full. The inclusion of anticipated expenses renders the request less precise and less compelling as a matter of reasonableness.
Sixth, the inclusion of travel-related charges also supports a reduction. Travel may at times be a legitimate incident of litigation, but where the matter is essentially a routine commercial collection action and the fee request is already highly disproportionate to the underlying debt, the Court may properly take travel charges into account as part of the overall excessiveness analysis.
Seventh, while defendants' opposition to the fee application is not presented as a line-by-line billing objection, defendants plainly have challenged the reasonableness of plaintiff's monetary demands and have opposed the motion in full. The Court does not view itself as precluded from reducing the fees simply because defendants did not furnish their own accountant-like parsing of every entry. The Court's responsibility to assess reasonableness is independent. It exists notwithstanding contractual entitlement and notwithstanding the absence [*13]of a hyper-granular adversarial response to each time entry.
At the same time, the Court does not conclude that the fee application should be denied wholesale. The rates charged are not, on their face, outside the realm of commercial reasonableness for this county and for this kind of work. The problem lies not in any single hourly rate alone, but in the combined effect of the staffing pattern, the number of hours, the inclusion of anticipated expenses, the travel charges, and the marked disproportion between the requested fees and the debt recovered. The Court therefore declines to engage in an artificial exercise of reducing or striking isolated entries one by one. Such an approach would suggest a false precision not warranted by the record and would obscure the broader point: the application is excessive in the aggregate.
The Court instead concludes that an across-the-board reduction is the fairest and most principled means of fixing a reasonable award on the record presented. Having weighed the contractual entitlement, the actual work necessarily performed, the straightforward nature of the underlying action, the procedural history, the layered staffing, the hours claimed, the expenses sought, and the substantial disproportionality between the request and the recovery, the Court finds that a reduction of fifty percent is warranted and appropriate.
Accordingly, the Court fixes attorneys' fees and expenses in the total amount of $13,325.61, representing one-half of the requested $26,651.22. This amount reflects the Court's considered judgment as to what is reasonable and compensatory, while avoiding a fee award that would be excessive, disproportionate, and insufficiently disciplined by the realities of the case. 
IV. Conclusion and Decretal Paragraphs
For all of the foregoing reasons, plaintiff is entitled to summary judgment. It has established the existence and enforceability of the Note, Loan Agreement, Guaranty, and Security Agreement; the Borrower's payment default beginning March 11, 2024; the Guarantor's liability under the Unlimited Guaranty; the Bank's attached and perfected security interest in the Borrower's collateral; the Bank's entitlement to possession and commercially reasonable disposition of the collateral following default; the dismissal of defendants' affirmative defenses; the amount due under the Loan; and plaintiff's contractual entitlement to attorneys' fees and expenses, albeit in a reduced amount fixed by the Court.
Accordingly, it is
ORDERED that plaintiff TD Bank, N.A.'s motion for summary judgment pursuant to CPLR § 3212 is GRANTED in its entirety, except to the extent that the Court reduces the attorneys' fees and expenses requested, as set forth herein; and it is further
ORDERED that the Court finds, as a matter of law, that defendant K & G Appliance Service, LLC is liable to plaintiff TD Bank, N.A. under the Note and Loan Agreement by reason of its payment default, including its failure to make the payment due March 11, 2024 and each month thereafter; and it is further
ORDERED that the Court finds, as a matter of law, that defendant Gilbert Galvez is liable to plaintiff TD Bank, N.A. under the Unlimited Guaranty; and it is further
ORDERED that defendants' affirmative defenses are dismissed in their entirety; and it is further
ORDERED that the Clerk of the Court is directed to enter judgment in favor of plaintiff TD Bank, N.A. and against defendants K & G Appliance Service, LLC and Gilbert Galvez, jointly and severally, in the amount of $38,204.91 as of January 27, 2026, consisting of $30,446.67 in principal, $7,191.97 in accrued interest, $150.00 in site visit fees, and $416.27 in [*14]late charges, together with per diem interest at the rate of $11.21 from January 28, 2026 through the date of entry of judgment; and it is further
ORDERED that plaintiff is awarded attorneys' fees and expenses in the amount of $13,325.61; and it is further
ORDERED that statutory costs and disbursements are awarded to plaintiff as taxed by the Clerk; and it is further
ORDERED that the Court further finds that plaintiff TD Bank, N.A. holds an attached and perfected security interest in the Borrower's collateral pursuant to the Security Agreement and the Uniform Commercial Code, and is entitled, following default, to enforce its rights and remedies as a secured creditor; and it is further
ORDERED that defendant K & G Appliance Service, LLC shall make the collateral available to plaintiff forthwith, and plaintiff is authorized to take possession of, inspect, appraise, preserve, sell, liquidate, dispose of, or retain the collateral in a commercially reasonable manner, with the proceeds to be applied in accordance with the Loan Documents and governing law; and it is further
ORDERED that plaintiff is granted the relief necessary to obtain possession of the collateral pursuant to CPLR article 71, including issuance of an appropriate WRIT OF REPLEVIN, and the Sheriff of any county in which the collateral may be found is authorized, upon presentation of the writ and in accordance with law, to seize the collateral and deliver the same as directed by the writ; and it is further
ORDERED that plaintiff is granted such other and further relief as is just and proper.
This constitutes the Decision and Order of the Court.

Dated: March 25, 2026Staten Island, New YorkHON. RONALD CASTORINA, JR.JUSTICE OF THE SUPREME COURT